## No. 2695.

### G. W. WILLIAMS *v.* THE STATE.

1. FRAUDULENT REMOVAL OF MORTGAGED PROPERTY — INDICTMENT — TERMS CONSTRUED.—This prosecution was for removing mortgaged property out of the State, as that offense is defined by article 797 of the Penal Code. In the stead of the statutory word "remove," the indictment uses the word "run." *Held*, that the words are equivalent as the word "remove" is used in the statute. See the statement of the case for the charging part of an indictment *held* sufficient to charge the offense of removing mortgaged property out of the State.

2. SAME—VENUE.—Article 205 of the Code of Criminal Procedure provides that "prosecutions for offenses committed wholly or in part without, and made punishable by law within, this State, may be commenced and carried on in any county in which the offender is found." The mortgage in this case was executed in K. county, where the defendant had possession of the property. He removed the property from said county, and, while en route to Louisiana, was arrested in H. county. Escaping thence, he went into Louisiana with the property. The contention of the defendant is that H., and not K., county, was the county of the venue. But, *held*, that the offense on trial being one that comes within the purview of article 205 of the Code Criminal Procedure, it was properly prosecuted in K. county.

3. SAME — FACT CASE.—See the statement of the case for evidence *held* sufficient to support a conviction for the fraudulent removal of mortgaged property.

APPEAL from the District Court of Kaufman. Tried below before the Hon. Anson Rainey.

The penalty assessed in this case was a term of two years in the penitentiary. The conviction was had under the first count in the indictment, which reads as follows: " * * That G. W. Williams, on or about October 1, 1888, in the county and State aforesaid, with the intent to defraud W. A. Taylor & Brother, a firm composed of W. A. Taylor and George Taylor, did unlawfully run out of said State certain personal and movable property, to wit, one brown mare about eight years old, branded IXL, the said G. W. Williams having heretofore, to wit, on January 27, 1888, executed and delivered to the said W. A. Taylor & Bro. a valid mortgage in writing upon the said above described property, and which said mortgage was at the time of removal of said property a valid, subsisting, unsatisfied mortgage upon said property, and was then owned and held by the said W. A. Taylor & Bro.; against the peace and dignity of the State."

The State introduced in evidence the mortgage referred to in the indictment, which, besides the horse mentioned therein, described two other horses and a two horse wagon, and crops to be raised by the mortgager. The execution of the mortgage was proved by the mortgagee and the attesting witness, and the former testified that at the time the defendant left Kaufman county with the property described in the mortgage (except the crops), no part of the debt to cover which the mortgage was executed, was paid.

Demasters testified that defendant lived at his house, and made crops on two places in the year 1888; that, not having told witness he was going to leave, nor where he was going to, the defendant, one evening in September, 1888, while witness was absent from home, loaded all of his household effects on the wagon described in the mortgage, and, with the three horses described in the mortgage (the animal described in the indictment being one of them), and the said wagon and household effects left witness's house. The witness, on the same evening, informed the Messrs. Taylor that defendant had gone.

Fields testified, for the State, that acting for Taylor & Brother, he pursued the defendant, and finally brought back the brown mare and other two horses and wagon, which he delivered to the Taylors. The defendant was arrested at Wascom

station in Harrison county, on a telegram sent ahead by witness, and was in custody with the property at the quarantine camp when witness reached Wascom. Defendant, however, escaped into Louisiana. riding the brown mare, and leaving the other property in the quarantine camp. He was pursued by deputy sheriff Pannell, who soon returned with him and the mare to Wascom, where Pannell delivered the mare to the witness.

. Deputy sheriff Pannell testified, for the State, that he reached Wascom, in Harrison county, about a mile from the Louisiana line, just after defendant's escape. He pursued defendant to Jewella, Louisiana, in company with a Louisiana officer. The defendant was then in a house, and the brown mare was grazing in a peach orchard. The Louisiana officer told the defendant that he wanted him to go with him, the officer, and witness, to Wascom, and identify the property. Defendant agreed to and did go back with them to Wascom, where he was turned over to witness by the officer. Witness then turned the property over to Fields, and took defendant to Kaufman. The defense introduced no evidence.

*Manion & Huffmaster,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. This is a conviction under article 797 of the Penal Code. Instead of alleging in the language of the statute that the defendant did "remove" the property out of the State, the indictment alleges that he did "run" it out of the State. The word "run" in the connection in which it is used in the indictment is, we think, equivalent to the statutory word "remove," and we therefore hold that the use of "run" instead of "remove" does not render the indictment bad. (Willson's Cr. Stat., sec. 1955.) In all respects we hold the first count in the indictment, the count upon which the conviction was had, to be sufficient.

It appears from the evidence that the mortgage upon the horse in question was executed in Kaufman county, and that defendant had possession of the horse in said county. He removed said horse from said county, going in the direction of Louisiana. When he reached Harrison county, and was in one mile of the boundary line between Texas and

Louisiana, he was arrested by quarantine authorities and while being held in custody by said authorities he escaped, taking said horse with him into the State of Louisiana.

It is contended by counsel for defendant that the venue of the offense is in Harrison and not Kaufman county. There is no provision of statute specifically declaring the venue of this offense. In Roberson v. The State, 3 Texas Court of Appeals, 502, where the prosecution was for *selling* mortgaged property, it was held that the venue of such offense was in the county where the sale was made, irrespective of where the lien upon it was executed, or where the property was removed from. That decision, however, is not applicable to the question before us.

There is a general provision of our Code as follows: "In all cases except those enumerated in previous articles of this chapter, the proper county for the prosecution of offenses is that in which the offense was committed." (Code Crim. Proc., art. 225.) But this article does not apply in this case, because the offense can not be said to have been committed—that is *completed*—in any county in this State. It was not an offense to remove the horse from Kaufman to Harrison, or any other county in this State. No offense was committed until the horse had been removed out of this State.

This offense is one which we think comes within the meaning of article 205 of the Code of Criminal Procedure, which reads: "Prosecutions for offenses committed wholly or in part without, and made punishable by law within this State, may be commenced and carried on in any county in which the offender is found." This offense is one which can not be committed wholly within this State, but must be committed partly without this State, because the property must be removed out of the State before the offense is complete. There is no more rea son for holding that the offense was committed in Harrison than in Kaufman county. It was not and could not be committed wholly within this State, and but for the article of the code last cited, could not be prosecuted in any county in this State. It was certainly not the intention of the Legislature to denounce an offense over which the courts of this State could not exercise jurisdiction. We do not think we are giving article 205, above cited, a strained or unreasonable construction in making it applicable to this case. On the contrary, we think the plain meaning of that article embraces this particular offense, as

well as others of a similar character, where there is no special provision controlling. We hold, therefore, that this prosecution was properly commenced and maintained in Kaufman county.

As to the evidence, we think it sustains the conviction. The issue of fraudulent intent was fairly and fully submitted to the jury by the charge of the court, and the jury were well warranted by the evidence in concluding that such intent on the part of defendant existed and accompanied the act of the defendant in removing the horse out of this State.

We find no error in the conviction, and the judgment is affirmed.

*Affirmed.*

Opinion delivered February 20, 1889.